CHADWICK–BaROSS, INC.

v.

MARTIN MARIETTA CORPORATION.

Supreme Judicial Court of Maine.

Argued Sept. 13, 1984.

Decided Oct. 31, 1984.

Preti, Flaherty & Beliveau, Robert Checkoway (orally), Portland, for Chadwick-BaRoss.

M. Roberts Hunt, James M. Bowie, Portland, for Cuthbertson.

Hewes, Culley & Beals, Stephen C. Whiting (orally), Portland, for Martin Marietta Corp.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Martin Marietta Corporation appeals from a judgment of the Superior Court (Knox County) awarding $55,573.44 in attorney's fees to Chadwick-BaRoss, Inc., under an indemnification agreement contained in an equipment lease between the parties. Indemnification of Chadwick-BaRoss's attorney's fees became an issue when Chadwick-BaRoss was sued in a wrongful death action brought by the widow of a Martin Marietta employee killed while operating a front-end loader leased to Martin Marietta by Chadwick-BaRoss. Martin Marietta asserts that the Superior Court erred in allowing those fees because: (1) the pretrial order did not explicitly list indemnification of attorney's fees as an "issue," and thus Chadwick-BaRoss waived that issue; (2) Chadwick-BaRoss's assignment of the lease to a third party before the claim arose precludes indemnification of Chadwick-BaRoss; (3) several evidentiary rulings by the trial court were erroneous and prejudicial; (4) the language of the lease did not require indemnification in this case; and (5) legal fees incurred to prosecute Chadwick-BaRoss's claim for indemnification in any event are not recoverable. We sustain Martin Marietta's appeal only on its last point. Because of that error, we vacate the judgment and remand for the trial court to determine what part of the legal fees awarded below ($55,573.44) should be disallowed as arising from Chadwick-BaRoss's prosecution of its indemnification claim.

On January 2, 1971, Chadwick-BaRoss, a heavy equipment dealer, orally agreed to lease a front-end loader to Martin Marietta, then the operator of a cement plant in Thomaston. On March 17, 1971, the parties reduced the agreement to writing, and on that same date Chadwick-BaRoss assigned the lease to Clark Leasing Company for financing purposes. On December 5, 1973, Albert Cuthbertson, a Martin Marietta employee, was killed while operating the front-end loader. Cuthbertson's widow brought a wrongful death action against Chadwick-BaRoss and the manufacturer of the front-end loader, asserting their liability on negligence, strict liability, and breach of warranty grounds.

Chadwick-BaRoss filed a third party complaint against Martin Marietta seeking indemnity for any judgment that might be recovered by Mrs. Cuthbertson and for all cost of its defense in the wrongful death action. The indemnity claim was based on paragraph 6 of the lease between Chadwick-BaRoss and Martin Marietta:

LIABILITY: LESSEE assumes all risk and liability arising from LESSEE's possession, use, and operation of each unit of Equipment from the moment of deliv-

ery to LESSEE to the moment of return to LESSOR and agrees to indemnify and hold LESSOR harmless from any and all of the following, whether the same be actual or alleged unless directly caused by the negligence of LESSOR: all loss, damage, claims, suits, taxes, liens, penalties, fines, liability and expense (including attorney's fees) howsoever arising or incurred because of such possession, use and operation of Equipment including, but not limited to, damages for injuries or death to persons or injury to or destruction of property, claims and liens for storage, labor and materials and all loss of and damage to Equipment.

Just before the start of the wrongful death trial, Mrs. Cuthbertson withdrew her strict liability claim. At the end of her evidence, the trial justice entered a directed verdict dismissing the warranty claims. The jury returned a special verdict finding that neither the manufacturer nor Chadwick-BaRoss had been negligent. The Superior Court then entered a final judgment under M.R.Civ.P. 54(b) on Mrs. Cuthbertson's claims so that she could appeal at once to this court. In a decision entitled *Cuthbertson v. Clark Equipment Co.*, 448 A.2d 315 (Me.1982), we affirmed the Superior Court judgment in favor of the manufacturer and Chadwick-BaRoss.

On March 5, 1984, The Superior Court held a hearing on Chadwick-BaRoss's indemnification claim. The Superior Court justice ruled that the lease agreement required Martin Marietta to indemnify Chadwick-BaRoss for the legal fees incurred both in defending against Mrs. Cuthbertson's suit and in prosecuting its indemnity claim. The justice fixed those total fees at $55,573.44. Martin Marietta is now appealing that judgment.

I.

Martin Marietta argues that because indemnification of attorney's fees was not explicitly listed as an issue in the pretrial order, that issue was waived, and thus the Superior Court erred in allowing indemnifi-

cation of Chadwick-BaRoss's defense costs. *See Ocean National Bank of Kennebunk v. Odell*, 444 A.2d 422, 424 (Me.1982) ("An issue not raised in the pretrial order is treated as waived at both the trial and appellate level of the proceedings"). On the facts of the case at bar, we cannot accept this argument. The Superior Court justice who heard Chadwick-BaRoss's indemnity claim on March 5, 1984, reviewed the entire record of the underlying wrongful death action and the associated third party indemnity suit. On the basis of that review, he found that "the issue of indemnity was at no time waived." We agree with that conclusion.

In the "nature of the case" section of its pretrial memorandum, Chadwick-BaRoss stated:

Defendant Chadwick-BaRoss, Inc. has brought a Third-Party action against the lessee of the tractor shovel, Martin Marietta Corporation, alleging its liability to Defendant Chadwick-BaRoss, Inc. *pursuant to indemnification provisions in the agreement for lease....*

(Emphasis added) As quoted above, paragraph 6 of the agreement for lease provides for indemnification of "all ... expense (including *attorney's fees*) howsoever arising or incurred because of such possession, use and operation of Equipment ...." (Emphasis added) Section 3(q) of the "Issues" section of that memorandum lists as an issue:

Whether Third-Party Defendant Martin Marietta Corporation is liable to Defendant Chadwick-BaRoss, Inc. to indemnify it for any *judgment* which may be entered against said Defendant in this action pursuant to a written lease between the parties dated March 17, 1971.

(Emphasis added) Martin Marietta adopted those sections of the Chadwick-BaRoss pretrial memorandum in its pretrial memorandum, and the court later incorporated them into its pretrial orders. Although Chadwick-BaRoss did not explicitly list indemnification of attorney's fees in the issue section of its pretrial memorandum as

incorporated in the court's pretrial order, the justice appropriately concluded that Chadwick-BaRoss did not waive the indemnification issue. *Ocean National Bank* should not be read to mean that to be preserved an issue must be listed in the "issues" section of the pretrial memorandum as incorporated in the order. While explicit listing of all issues to be litigated is by far the better practice, it is not appropriate that the rule be interpreted with technical strictness in all circumstances. In the case at bar, listing "indemnification provision in the agreement for lease" (which included the indemnification of attorney's fees) in the "nature of the case" section of Chadwick-BaRoss's pretrial memorandum was adequate to put indemnity of attorney's fees (as well as any judgment) in issue in the Superior Court. The pretrial order placed the parties on notice that indemnification of attorney's fees was in controversy.

In addition, the record demonstrates that the parties contested the issue of indemnification and intended that that issue be decided by the court. At the close of all evidence at trial, Martin Marietta moved for a directed verdict on Chadwick-BaRoss's indemnity claim. The trial justice did not immediately rule on this motion. After an inquiry from Martin Marietta regarding the status of the motion, the judge ruled that indemnification could not be resolved until the jury determined if Chadwick-BaRoss had been negligent. On September 10, 1981, after the jury absolved Chadwick-BaRoss of any liability, the trial justice by his Rule 54(b) order separated the wrongful death action from the third party indemnity claim, so that the judgment in the former could be appealed. The trial justice ruled that while the underlying action was on appeal, Chadwick-BaRoss's attorney fees would continue to accrue, and the total bill could not be finally determined until the termination of the wrongful death suit. Plainly, the trial justice understood that Chadwick-BaRoss's indemnity claim extended to attorney's fees, and the record before us does not suggest that Martin

Marietta's counsel made any contrary argument when the Rule 54(b) order was entered.

In sum, reference to the indemnification provision of the lease in the "nature of the case" section of the pretrial memorandum and the action of the trial justice and all the parties in the court below indicate that all understood, even at the end of the principal trial, that the indemnification of attorney's fees remained in issue. On these facts, the Superior Court was justified in concluding that the question of indemnification of attorney's fees was never waived.

## II.

■ On March 17, 1971, the date of the written lease between Chadwick-BaRoss and Martin Marietta, the former assigned "all of its ... right, title, and interest" in the lease to Clark Leasing Company for financing purposes. Paragraph 5(B) of the lease agreement between Chadwick-BaRoss and Martin Marietta authorized such an assignment of rights:

> LESSOR may assign or otherwise transfer this Lease or the amount due or to become due hereunder or its right, title and interest in and to the Equipment.

Martin Marietta now argues, however, that by this assignment, before the date of the accident, Chadwick-BaRoss lost any rights it had under the indemnification clause. At the 1984 hearing on indemnification the Superior Court ruled that Chadwick-BaRoss had retained its coverage under the clause because the assignee, Clark Leasing, would have no need to be indemnified and because the contract was personal in nature and thus not assignable. We find no error in this ruling.

The equipment lease was assigned by the lessor, Chadwick-BaRoss, to Clark Leasing solely for purposes of financing the transaction. Like direct sales of similar equipment, the lease arrangement between Chadwick-BaRoss, the equipment dealer, and Martin Marietta, the buyer, was financed by the manufacturer's financing af-

filiate. By the same document by which Chadwick-BaRoss also guaranteed the lease payments due from Martin Marietta up to 15% thereof. Upon final payment, the lease was returned by Clark Leasing to Chadwick-BaRoss.

Assignment of the lease did not transfer the coverage of the indemnification clause of paragraph 6 of the lease from Chadwick-BaRoss to the assignee. The indemnification provision of the lease could only benefit a party involved in the manufacture, sale, or leasing of the equipment. Clark Leasing, as assignee of commercial paper, could not be held liable by a third party for any wrongdoing in an accident involving the front-end loader. Chadwick-BaRoss, on the other hand, was subject to being held liable in damages for its handling or supplying of the equipment before or at the time of the lease.

In interpreting a clause similar to the one in issue in the case at bar, a New Jersey appellate court found that the original party to commercial paper continued to be protected by the indemnification clause despite the assignment of the contract. The court wrote: "Excepting an exposure to liability of the seller which continues beyond the assignment simply because of its financing arrangements would, in our view, patently frustrate the basic purpose for which the seller included the indemnity clause in the contract in the first place." *Berry v. V. Ponte & Sons*, 166 N.J.Super. 513, 517, 400 A.2d 114, 116, *cert. denied*, 81 N.J. 271, 405 A.2d 816 (1979). The soundness of the New Jersey view is illustrated by the typical bank-financed real estate purchase. The lease assignment involved in this case is comparable to a real estate mortgage. In the typical transaction, the seller of real estate gives a warranty deed agreeing to indemnify the buyer against certain risks. The buyer will then typically convey the property by a mortgage to the financing bank. The mortgagor-buyer has not parted with his seller's covenants of warranty by conveying the property to the bank as security.

In construing the indemnification provisions of paragraph 6 of the lease in conjunction with the provisions of 5(B), which allow assignment of that lease, we must consider the principle that a contract to indemnify for a debt of another is personal in nature and thus not assignable by the actions of one party. "A contractual right can be assigned unless the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract." *Restatement (Second) of Contracts* § 317(2)(a). *See Salmon Lake Seed Co. v. Frontier Trust Co.*, 130 Me. 69, 74, 153 A. 671, 673–74 (1931) (contracts that depend on personal credit, trust, or confidence cannot generally be assigned by one of the parties); *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1035 (D.C. Cir.1973); A. Corbin, *Corbin on Contracts* § 868 (1963 & Supp.1984). In the case at bar, Chadwick-BaRoss's assignment of the lease could greatly increase the indemnification liability of Martin Marietta. For example, assignment of the lease by Chadwick-BaRoss to the manufacturer of the front-end loader might multiply the potential liability of the indemnitor many times. Accordingly, we find no intent on the part of the contracting parties to the lease that Chadwick-BaRoss's right to indemnity would be vitiated by an assignment solely for financing purposes.

### III.

Martin Marietta also appeals two evidentiary rulings of the Superior Court. It claims first that the justice below improperly admitted the bills of Chadwick-BaRoss's attorneys under the business records exception to the hearsay rule. Second, Martin Marietta alleges that the admission of the deposition testimony of the attorney who supervised Chadwick-BaRoss's defense, in which he stated the amount of fees charged by other law firms involved in the wrongful death suit, violated the hearsay rule. We hold that the admission of

the bills was proper, and that although the testimony of the supervising attorney regarding the fees of other law firms should have been excluded, admission of that testimony was harmless error.

■ In order to fall within the business records exception to the hearsay rule contained in M.R.Evid. 803(6), the testimony of a qualified witness must show that 1) the record was made at or near the time of the transaction by a person with knowledge of the event; 2) the record was kept in the regular course of business; and 3) the business had a regular practice of making such records. *E.N. Nason, Inc. v. Land-Ho Development*, 403 A.2d 1173, 1178 (Me.1979); *State v. Viger*, 392 A.2d 1080, 1083 (Me. 1978).

■ The foundational proof offered to demonstrate that the proffered bills met that three-point test is contained in the deposition of the supervising attorney. In that deposition he testified that he was the attorney responsible for the billing in the *"Cuthbertson* case" and responded affirmatively to the following questions:

Is it part of your ordinary business and professional practice to keep and maintain time records for legal services performed?

Is it also part of your ordinary business practice to incorporate those time records into bills sent to clients?

[These records] were kept in the ordinary course of your business, I take it?

Martin Marietta focuses on the word "your" in those questions and cites later testimony in which the supervising attorney admitted that with the exception of the time he spent directly working with one other lawyer in his firm he had no direct knowledge of the time billed by his colleagues. From that, Martin Marietta contends that there is no evidence that the other attorney's charges met the three-part test, since their billing practices were not testified to.

The supervising attorney was a qualified witness to testify in general as to his firm's billing practices, and thus was able to qualify those records under this exception to the hearsay rule. It was not error for the trial justice to interpret the word "your" in the above quotations to mean the entire firm engaged to defend Chadwick-BaRoss instead of just the supervising attorney himself. The bills were properly admitted under M.R.Evid. 803(6).

■ Martin Marietta also claims that it was prejudicial error for the Superior Court to admit the portion of the supervising attorney's deposition in which he testified that he was familiar with the total charges by the attorneys for the other defendant in the Cuthbertson suit, that those charges amounted to $70,000, and that those other attorneys' services were "almost identical in terms of time span with [those of his firm]."

Although the amount charged by other firms is clearly hearsay and as such should have not been admitted in evidence, the failure to exclude that evidence is harmless error. We believe it highly probable that the error did not affect the judgment. *See State v. True*, 438 A.2d 460, 467 (Me.1981). There is no indication that the justice was influenced to approve the $55,573.44 in attorney's fees charged by Chadwick-BaRoss's counsel by comparing that figure to one vague and ambiguous reference to the total amount charged by another firm representing a co-defendant. We must remember that a Superior Court justice has a substantial experiential basis for estimating the amount and value of legal services involved in the defense of a major wrongful death action. The justice hearing the indemnity claim made his own review of the matter and concluded that the fee charged by Chadwick-BaRoss's law firm was not unreasonable in the aggregate. Accordingly, we will not disturb the award of attorney's fees based on the erroneous admission of the hearsay evidence of the fee paid by Chadwick-BaRoss's co-defendant.

## IV.

■ At the core of this case is Martin Marietta's claim that the language of paragraph 6 does not give Chadwick-BaRoss a right to indemnity for the latter's attorney's fees. Martin Marietta argues at length that the language of paragraph 6 is ambiguous and thus should be construed against the drafter/indemnitee. *See Hills v. Gardiner Savings Institution,* 309 A.2d 877, 881 (Me.1973); *cf. Doyle v. Bowdoin College,* 403 A.2d 1206, 1208 (Me.1979) (contract attempting to disclaim liability for a party's negligence will be strictly construed against that party). Even assuming *arguendo* that the language must be strictly construed, we affirm the Superior Court and hold that a fair reading of paragraph 6 requires Martin Marietta to indemnify Chadwick-BaRoss for its attorney's fees.

The language of the critical paragraph 6 is very broad indeed. Martin Marietta assumed *"all* risk and liability ... from the moment of delivery [to its possession] to the moment of return [to Chadwick-BaRoss] ..." (Emphasis added) Paragraph 6 contains an all-inclusive list of risks and liabilities, and Martin Marietta agreed to indemnify for those "howsoever arising or incurred because of [the] use, possession, and operation of the equipment." The breadth of this language is further emphasized by the nonexclusive list of damages (including attorney's fees) that Martin Marietta agrees to reimburse, and by the fact that indemnity is available "whether the [liability] be actual or alleged." There is only a single exception to this wide-ranging promise to indemnify; only if the damage is "directly caused by the negligence of [Chadwick-BaRoss]" would Martin Marietta be excused from its obligation to indemnify.

There is no question that Mr. Cuthbertson's death, and therefore the claims by his widow, arose out of the "possession, use, and operation" of the front-end loader by Martin Marietta. And, at the trial of the wrongful death action, the jury unanimously decided that Mr. Cuthbertson's fatal injuries had not been "directly caused" by Chadwick-BaRoss's negligence. Accordingly, under the language of paragraph 6, we hold that Martin Marietta must indemnify Chadwick-BaRoss for "all loss ... and expense (including attorney's fees)." To hold otherwise, we would have to ignore the plain meaning, and obvious intent, of the words of the lease between Martin Marietta and Chadwick-BaRoss.

## V.

■ In addition to allowing the attorney's fees incurred in defending the wrongful death suit, the Superior Court ordered Martin Marietta to indemnify Chadwick-BaRoss for its attorney's fees incurred in litigating the indemnity question itself. The judgment here appealed was to that extent erroneous.

■ The law is well-settled that allowance of attorney's fees under indemnification agreements is limited to the defense of the claim indemnified against and does not extend to costs incurred in establishing the right of indemnity. *Akerley v. General Electric Co.,* No. 75–146P, slip op. at 11 (D.Me. Oct. 9, 1980); *Simko v. C & C Marine Maintenance Co.,* 594 F.2d 960, 969 (3d Cir.1979); *Vallejos v. C.E. Glass Co.,* 583 F.2d 507, 510 (10th Cir.1978); *see* 41 Am.Jur.2d *Indemnity* § 36, at 726–27 (1968). Nothing in the language of the indemnification clause of the lease would suggest an exception to the general rule.

■ At oral argument Chadwick-BaRoss for the first time raised the alternative contention that paragraph 10 of the lease would require that Martin Marietta pay Chadwick-BaRoss's attorney's fees incurred in seeking indemnity. We will not entertain this belated argument. Generally, an issue not addressed by the brief of either party and raised at oral argument is viewed as waived on appeal. *Franklin Property Trust v. Foresite, Inc.,* 438 A.2d 218, 221 (Me.1981); *August Realty, Inc. v. Town of York,* 431 A.2d 1289, 1290 (Me. 1981); *see Harrington v. Town of Gar-*

*land,* 381 A.2d 639, 643 (Me.1978). We will not interpret paragraph 10 without the benefit of a factual hearing in the Superior Court and a determination by that court, and without full briefing and oral argument of the issue in this court.

The record before us includes the bills of Chadwick-BaRoss's attorneys and four depositions in which those lawyers discuss their billing practices. However, the bills are ambiguous as to what fraction of the legal services provided by Chadwick-BaRoss's attorneys involved the present dispute over indemnification. The depositions are similarly unhelpful in determining what portion of the fees should be disallowed. Therefore, we must remand to the Superior Court to permit it to correct the amount of the judgment. On remand, Chadwick-BaRoss has the burden of proving the attorney's fees they incurred in defending the wrongful death action. Only those fees come within Martin Marietta's indemnity agreement.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.