**Susan SCOTT, et al.**

v.

**LIPMAN & KATZ, P.A., et al.**

Supreme Judicial Court of Maine.

Argued June 14, 1994.

Decided Oct. 26, 1994.

970

Thomas F. Hallett (orally), Janet M. Kantz, Portland, for plaintiffs.

Jack H. Simmons (orally), Valerie Stanfill, Berman & Simmons, P.A., Lewiston, for defendants.

Before ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Susan and Roscoe Scott (the "Scotts"), individually and on behalf of their minor child, appeal from the Superior Court's (Knox County, *Chandler, J.*) denial of their motion for relief from its order approving an infant settlement and attorney fees. M.R.Civ.P. 60(b). Lipman and Katz, P.A., ("Lipman") argues 1) that the appeal is untimely, 2) that the Rule 60(b) motion was untimely, and 3) that the trial court did not err in denying the Scotts' Rule 60(b) motion. We vacate the orders of the trial court denying 60(b) relief and approving the attorney fees.

## Background

The Scotts consulted Lipman concerning the possibility of bringing suit on behalf of their child who has a withered, underdeveloped right arm as a result of an injury at birth. After that consultation the Scotts and Lipman executed a contingent fee agreement which provided that the fee could not exceed 40% of the amount collected in a suit against the physician who delivered the child. This agreement referred to, and reprinted verbatim, 24 M.R.S.A. § 2961 (1990).[1] Although the Scotts concede that they reviewed the agreement prior to signing it, they claim that Lipman did not explain it to them. Lipman, on the other hand, testified that he explained the fee agreement to them, that they reviewed it, and that he answered any questions they had concerning the agreement.

Lipman's representation consisted of preparing a settlement brochure that included an index and preliminary statement, the child's medical records, and an economic analysis prepared by an expert obtained by Lipman; filing a notice of claim; and negotiating with the physician's malpractice insurer. The case was settled prior to a panel hearing and prior to discovery when the Scotts accepted the insurer's offer to pay the physician's policy limit of $500,000. Lipman's total disbursements were $1,238.65. Although all parties recognized that the fee agreement provided for a fee of up to 40%, Lipman told the Scotts that he would seek fees of one-third of the gross settlement.

Lipman and the Scotts signed a motion to allow the one-third fee and a motion to approve the settlement. Following a one-half hour meeting at the Waldo County Courthouse in Belfast, at which Lipman explained the case and asked for a one-third fee, the trial court (*Chandler, J.*) approved the settlement and the fee. The Scotts were not present at this meeting. Lipman testified that, at this meeting, he did not provide the court with a calculation of the fee allowable under 24 M.R.S.A. § 2961(1)[2] and that he did not specifically go through each factor set forth in M. Bar R. 3.3(a).

After consulting with another attorney, the Scotts filed a Rule 60(b) motion for relief from the trial court's order. The court

---

1. Section 2961 provides, in pertinent part:

   (1) **Limitation.** In an action for professional negligence, the total contingent fee for the plaintiff's attorney or attorneys shall not exceed the following amounts, exclusive of litigation expenses:
   A. Thirty-three and one-third percent of the first $100,000 of the sum recovered;
   B. Twenty-five percent of the next $100,000 of the sum recovered; and
   C. Twenty percent of any amount over $200,-000 of the sum recovered.

   \*   \*   \*   \*   \*   \*

   (3) **Review.** If the plaintiff prevails in the action for professional negligence, the plaintiff's attorney may petition the court to review the reasonableness of the fees permitted under subsection 1. The court may award a greater fee than that permitted by subsection 1, provided that:
   A. The court, considering the factors established in Maine Bar Rule 3 as guides in determining the reasonableness of a fee, finds that the fees permitted by subsection 1 are inade-

   quate to compensate the attorney reasonably for the attorney's services; and
   B. The court finds that the fee found reasonable under paragraph A does not exceed the percentages set forth in the contingent fee agreement between the attorney and plaintiff as the maximum amount of compensation the attorney may receive.

   An attorney may petition the court under this subsection only if, prior to the signing of a contingent fee agreement by the attorney and client, the attorney informs the client, orally and in writing, of the provisions of this section.

2. Under the provisions of section 2961(1), Lipman was entitled to a fee of $118,333.33 plus expenses. (e.g., $100,000 × 33⅓% + $100,000 × 25% + $300,000 × 20% = $118,333.33). The trial court found Lipman's disbursements to be $1,238.65. By allowing a fee of $166,666, the trial court awarded Lipman a fee that was $48,-332.67 greater than a fee determined by section 2961(1) (e.g., $166,666 − $118,333.33 = $48,-332.67).

(*Chandler, J.*) denied that motion after a hearing. The Scotts filed a motion for findings of fact and conclusions of law, and a motion for reconsideration, both of which were denied. The Scotts then filed a notice of appeal to this Court. Lipman has filed a motion to dismiss the appeal.

## Timeliness of the Appeal

The notice of appeal was filed more than 30 days after all of the trial court's rulings on the Rule 60(b) motion except the denial of a motion for reconsideration of the 60(b) denial. Lipman argues that the appeal is untimely since the notice of appeal was neither filed within 30 days from the entry of judgment nor filed within 30 days from the denial of any motion that tolls the 30 day period. He argues that the motion for reconsideration did not toll the running of the 30 day period of M.R.Civ.P. 73(a)[3] since the civil rules do not provide for a motion for reconsideration to the Superior Court and since Rule 73(a) does not list a motion for reconsideration as a motion which tolls the 30 day period.

■ Although the Maine Rules of Civil Procedure do not provide specifically for a motion for reconsideration to the Superior Court, we have previously held that such motions should be treated as motions made to alter or amend a judgment pursuant to M.R.Civ.P. 59(e). *Anderson v. Willey*, 514 A.2d 807, 809 (Me.1986); *Dongo v. Banks*, 399 A.2d 574, 575 (Me.1979). Since the

Scotts' motion for reconsideration was filed within 10 days of the denial of their Rule 60(b) motion, and since the notice of appeal was filed within 30 days of the denial of their motion for reconsideration, we conclude that the Scotts' appeal is timely. M.R.Civ.P. 59(e), 73(a).

## Timeliness of the Rule 60(b) Motion

■ The Scotts filed the Rule 60(b) motion with the trial court 364 days after the court approved the settlement and attorney fees.[4] Lipman argues that the Rule 60(b) motion was not brought within a "reasonable time" considering the circumstances, and thus the trial court correctly denied it. The trial court found that the Rule 60(b) motion was timely filed. We review this decision for an abuse of discretion. *Small v. D'Ambra Mercantile Enterprises*, 583 A.2d 1031, 1032 (Me. 1990). We find no abuse of discretion in the trial court's decision on the timeliness of the 60(b) motion.

## Rule 60(b) Motion

■ We review a trial court's denial of a Rule 60(b) motion for clear error or an abuse of discretion. *Fleet Bank of Maine v. Hunnewell*, 633 A.2d 853, 854 (Me.1993); *Wood v. Wood*, 602 A.2d 672, 674 (Me.1992). The supporting papers that must accompany any motion or application to approve a settlement of the claims of an infant are detailed in M.R.Civ.P. 17A(b).[5] Specifically, Rule

---

3. Rule 73(a) provides, in pertinent part:

The time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law.... The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subdivision commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: granting or denying a motion for judgment under Rule 50(b); or making findings of fact or conclusions of law as requested under Rule 52(a); or granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; **or granting or denying a motion under Rule 59 to alter or amend the judgment;** or denying a motion for a new trial under Rule 59....

(emphasis added).

4. The Scotts filed a motion seeking relief pursuant to M.R.Civ.P. 60(b)(1, 3 & 6). Rule 60(b) provides, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken....

5. A *motion* is to be used when there is a pending action. If, as in this case, no action has been commenced, an *application* is the appropriate vehicle for obtaining court approval of a settlement. M.R.Civ.P. 17A(a).

17A(b)(1) requires the submission of an affidavit or verified application "stating that the movant or plaintiff was informed of the right to attend the hearing upon the motion or application and that the right to attend a hearing is waived, where court action without hearing is sought[.]" The affidavit must indicate that the movant or plaintiff was informed of the right to attend the hearing before the court. If the affidavit further indicates that the movant or plaintiff seeks court action without a hearing, the affidavit must include the movant's or plaintiff's waiver of the right to attend a hearing.[6]

■ In this case, the Scotts did not accompany Lipman when he met with the court prior to the approval of the settlement and fee. The record indicates that no affidavit or verified application was filed indicating that the Scotts were informed of their right to attend any hearing. In fact, Lipman testified at the Rule 60(b) hearing that he never discussed with Mrs. Scott her attendance at any hearing:

Q: Why didn't you want Mrs. Scott to come and talk to the judge?

[Lipman]: She never asked if she could come talk to the judge. She never asked if she could be present at a hearing. . . . I never told her she couldn't come to a hearing. We never even had any such discussion about her attending a hearing.[7]

---

6. Lipman argues that the obligation to include in the affidavit a statement that the movant or plaintiff was informed of the right to attend the hearing only applies "where court action without hearing is sought." Since court action with a hearing was sought in the form of Lipman's meeting with the judge at the Waldo County Courthouse, the affidavit did not have to include any statement about the movant or plaintiff being informed of the right to attend the hearing. Lipman apparently reaches this conclusion by reading the concluding clause "where court action without hearing is sought" as a clause that modifies and qualifies both the obligation of an attorney to inform the movant or plaintiff of the right to attend the hearing and the need to affirm in the 17A affidavit that this has been done.

Both in terms of logic and the history of the rule, this reading is insupportable. The attendance of an attorney at a 17A hearing is no substitute for the attendance of the movant or plaintiff if that party wants to be there. The rule evinces an unmistakable concern that the movant or plaintiff be informed of the right to attend a hearing whether or not there is a hearing. The history of the rule also reflects this concern.

In 1988, M.R.Civ.P. 17A(b)(1) was amended as follows:

Any motion or application filed in accordance with subdivision (a) of this rule shall be accompanied by . . . [a]n affidavit *or verified application* of the moving party or plaintiff . . . stating that the movant or plaintiff was informed of the right to attend the hearing upon the motion or application (for these matters may be set forth in a verified application) *and that the right to attend a hearing is waived, where court action without hearing is sought:*

Me.Rptr., 522–536 A.2d CCXXI. The Advisory Committee's Note to this amendment states that:

Rule 17A is amended to assure that the court receives sufficient information about the nature of a minor's injuries and their cause to permit an informed evaluation of a request for settlement. The amendment is also intended to provide more protection to the minor by requiring verification of deposits and better confirmation that all parties have agreed to the settlement.

\* \* \* \* \* \*

**Paragraph (1) has been amended to specify procedures for waiving hearing if hearing is not desired.**

M.R.Civ.P. 17A advisory committee's note to 1988 amend., Me.Rptr., 522–536 A.2d CCXXVI-II-CCXXIX. (emphasis added).

As this history indicates, language requiring an affidavit statement "that the movant or plaintiff was informed of the right to attend the hearing upon the motion or application" was already in the rule at the time of the 1988 amendment. Rather than eliminating this affidavit requirement that the plaintiff or movant be informed of the right to attend the hearing, the 1988 amendment added the requirement that the affidavit include a statement of waiver of the right to attend a hearing if no hearing was sought. This additional affidavit requirement would have been expressed more clearly if the new language had been written as follows: "an affidavit *or verified application* . . . stating that the movant or plaintiff was informed of the right to attend the hearing upon the motion or application . . . *and, where court action without hearing is sought, that the right to attend a hearing is waived.*" Thus written, the rule would have avoided any textual confusion about the relationship between the new language and the content of the 17A affidavit.

7. Susan Scott testified that there were discussions with Lipman about her attendance at such a hearing. She said that she told Lipman she wanted to go before the court to explain to it why she felt that she and her husband were entitled to compensation for costs incurred in caring for their child. She further testified that Lipman told her that it was not necessary for her to go before the court for that purpose. Susan Scott did not testify that she wanted to go before the judge to discuss. Lipman's attorney fees.

This testimony confirms what the record discloses—the Scotts never executed the affidavit or verified application required by M.R.Civ.P. 17A(b)(1) relating to the movant or plaintiff being informed of the right to attend a hearing. Although a motion to approve attorney fees was signed by the Scotts, the filing of such motion in no way diminishes the necessity for complying with the verified application and affidavit requirements of Rule 17A relating to a hearing where the attorney fees could be discussed. Therefore, the court's finding in the Rule 17A order that "the requirements of the Maine Rules of Civil Procedure 17A have been satisfied" was clearly erroneous.

The absence of the Rule 17A(b)(1) affidavit was neither considered by the trial court at the 60(b) hearing, briefed by the parties initially, nor argued at oral argument before this Court.[8] Generally, issues that are not briefed by the parties and raised at oral argument are not considered on appeal. *E.g., Chadwick–BaRoss, Inc. v. Martin Marietta Corp.,* 483 A.2d 711, 717 (Me.1984). Likewise, issues raised for the first time on appeal are generally unpreserved. *E.g., Bakala v. Town of Stonington,* 647 A.2d 85, 88 (Me.1994). However, this case presents an appropriate situation for departure from these general rules. First, we are applying a court rule which requires no fact finding. The error is apparent on the face of the record. *See Franklin Property Trust v. Foresite, Inc.,* 438 A.2d 218, 221 (Me.1981); *August Realty v. Inhabitants of Town of York,* 431 A.2d 1289, 1290 (Me.1981); *cf. Unit B. Kittery Teachers Ass'n v. Kittery Sch. Comm.,* 413 A.2d 534, 537 (Me.1980). Second, the courts have a special responsibility in Rule 17A proceedings to ensure that the interests of an infant are adequately protected. *See* M.R.Civ.P. 17A advisory committee's note to 1966 amend., R. Field, V. McKusick & K. Wroth, *Maine Civil Practice* 168 (2d ed. Supp.1981) ("[Rule 17A] is adopted out of a concern on the part of both the courts and the practicing bar for the protection of the rights of injured minors and for the avoidance of any appearance of impropriety on the part of the legal profession or laxness on the part of the judiciary").

Therefore, we will consider this affidavit issue as part of the appeal from the denial of the Rule 60(b) motion.

"To grant relief from a judgment pursuant to Rule 60(b)(6) there must be a showing of injustice in the original judgment." *Moulton v. Brown,* 627 A.2d 521, 523 (Me.1993) (citations omitted); *e.g., Merrill v. Merrill,* 449 A.2d 1120, 1125 (Me.1982). We are also mindful that "Rule 60(b) is not intended as an alternative method of appeal." *Kolmosky v. Kolmosky,* 631 A.2d 419, 421 (Me.1993) (citations omitted); *e.g., Fleet Bank of Maine,* 633 A.2d at 854. In *Reville v. Reville,* 370 A.2d 249, 253–54 (Me.1977) (citation omitted), we stated:

Rule 60(b) provides collateral remedial relief against unjust or inequitable final judgments, but the rule presupposes that a party has performed his duty to take legal steps to protect his own interests in the original litigation. The rule was not intended as an alternative method of appellate review, nor as a procedural means by which legal errors readily correctable on appeal may be challenged in a second round of litigation. Laudable as is the goal of providing relief from injustices which Rule 60(b) contemplates, courts must strike a balance between that goal and the salutary policy of finality in litigation.

In the unusual circumstances of this case, there is no conflict between the goal of providing relief from injustices and the prohibition against using Rule 60(b) as an alternative method of appellate review. The procedural requirements of Rule 17A provide protection for the infant by requiring verification that all parties have agreed to the settlement. M.R.Civ.P. 17A advisory committee's note to 1988 amend., Me.Rptr., 522–536 A.2d CCXXVIII–CCXXIX. This protective purpose is undermined when the court does not receive proof that the party representing the infant has been informed of the right to attend the Rule 17A hearing and that the party has waived the right to attend such a hearing when no hearing is sought. The Rule 17A hearing is the forum where the

---

**8.** Subsequent to oral argument, this Court entered an order on August 2, 1994 directing the parties to submit supplemental memoranda of law on the Rule 17A(b)(1) affidavit issue.

party representing an infant can raise concerns about the attorney fees or any other aspect of the settlement.[9] If the party found the outcome of this hearing objectionable, that party could appeal the order approving the infant settlement. That order has the effect of a judgment. 14 M.R.S.A. § 1605 (1980) (repealed by Laws 1993, ch. 97, § 1); 14 M.R.S.A. § 1605 (Supp.1993). In this case, the Scotts' right to appeal the order approving the settlement and the attorney fees may have been compromised by the failure of Lipman to comply with the procedural requirements of Rule 17A. In that sense, there is no conflict between the goal of preventing injustice and the goal of avoiding an alternative method of appeal. The possible injustice in this case relates to a lost opportunity to participate in a 17A hearing which could have been a prelude to a direct appeal.

■ The court's approval of this lost opportunity to participate in the 17A hearing was obvious error affecting substantial rights. Although the Scotts acknowledge, as they must, that they signed a motion seeking approval of the one-third attorney fees for Lipman, the Scotts did not testify at the 60(b) hearing that they would have further approved the attorney fees had they attended the Rule 17A hearing, as Lipman contends. One can only speculate about what would have happened if the Scotts had been informed of their right to attend the 17A hearing, chosen to attend, and listened in the

presence of the court to Lipman's request for attorney fees in excess of the presumptive fee provisions of 24 M.R.S.A. § 2961(3).[10] The need to speculate is the problem. Substantial rights are affected when the representatives of a child lose the opportunity to participate in a hearing where the attorney must explain the basis for the attorney fees sought and the trial court must consider the interests of the child and relevant statutory provisions in finally approving those fees.

■ Contrary to the argument of Lipman, the 60(b) hearing was not a substitute for a properly conducted 17A hearing. It is true that much of the testimony at the 60(b) hearing concerned the appropriateness of the trial court's approval of the attorney fees in its 17A order. The trial court also devoted most of its bench decision to an explanation of why it regarded its initial decision on attorney fees in the 17A hearing as correct. This focus converted part of the 60(b) hearing into precisely what it is not—a substitute for appeal. The trial court recognized this problem when it recessed the proceedings to discuss with counsel its uneasiness about the prospect of having to make findings of fact about its own thought processes at the time of the 17A hearing. Counsel for Lipman responded that "your thought processes goes [sic] to judicial discretion. The findings of fact are whether or not there is a factual basis for which you can conclude, within your discretion, that the menu[11] is not—is not

9. Although the approvals of many minor settlements do not require a hearing where the moving party or plaintiff, the minor or the attorney representing the minor attend, the approvals of some settlements involving substantial sums of money may justify the formality of a hearing and a record. As the trial court noted during the course of the 60(b) hearing:

[I]t would probably, upon reflection, have been better if, in approving or considering an approval of any infant settlement that amounts to a lot of money, if the court had a court reporter come in and make a record as to exactly what happened. That didn't happen here.

We are not mandating that approvals of minor settlements be routinely conducted with the formality of a hearing and a record. We are simply noting the cogency of the trial court's observation that it might be prudent to employ such formalities when the settlement involves substantial sums of money, large attorney fees, and a

statute such as 24 M.R.S.A. § 2961, which requires the trial court to make certain findings if the attorney fees approved exceed the statutory amounts.

10. The Scotts testified at the 60(b) hearing that they did not understand that the one-third attorney fees sought by Lipman were in excess of the presumptive fee provisions of 24 M.R.S.A. § 2961(3). The trial court concluded that it could not find "by a preponderance of the evidence or any other standard that Mr. Lipman did not inform his clients in the manner that he is supposed to." This finding clearly relates to the attorney fees issue and not the right of the Scotts to attend a hearing where the minor settlement would be considered.

11. Counsel's reference to a "menu" is an apparent reference to M. Bar R. 3.3(a) and the factors to be considered by the court in determining the reasonableness of a fee.

mandated. I can't imagine how any other judge could possibly do that."

■ Counsel was correct that no other trial judge could reconstruct the basis for the trial court's decision in its 17A order to approve the attorney fees sought by Lipman. Counsel was wrong in arguing that the trial court had an obligation to engage in that reconstruction at the 60(b) hearing in order to decide if its 17A approval of attorney fees was an abuse of discretion. Abuse of discretion by the trial court is an appellate issue. The proper focus of the 60(b) hearing should have been whether the kind of misrepresentation alleged by the Scotts on the part of Lipman had occurred [12] or whether an error in the 17A procedures justified relief from judgment.

Moreover, there was more than formal error in the trial court's review at the 60(b) hearing of the correctness of its earlier decision on attorney fees. There is a significant difference between justifying an earlier decision and making the decision in the first instance. Under the procedure followed here, the Scotts bore the unmistakable burden at the 60(b) hearing of proving to the trial court that its earlier decision approving the reasonableness of Lipman's attorney fees was wrong. At the 17A hearing Lipman had the burden of justifying attorney fees in excess of the presumptive fee provisions of 24 M.R.S.A. § 2961(3). In the context of that proceeding, in the presence of the trial court, the Scotts should have been afforded the opportunity to express their objections to the attorney fees sought if they wished to express such objections.

■ We must remand this matter to the Superior Court for reconsideration of the attorney fees issue. The denial of the 60(b) motion was an abuse of discretion in light of the clear error in the trial court's 17A order. The Scotts must now be given the opportunity they did not have initially—that is, to attend a Rule 17A hearing if they so choose and inform the court conducting the hearing of their views on appropriate attorney fees in light of the requirements of 24 M.R.S.A. § 2961. That statutory provision requires the court to undertake a careful analysis when approving a fee in a medical malpractice case that is greater than the statutory formula. This careful analysis is all the more important when the attorney fees are being approved as part of a minor settlement under Rule 17A.

We express no opinion in this case on what appropriate attorney fees should be. That determination will be the responsibility of the court considering the attorney fees issue upon remand.

The entry is:

Judgment vacated. Remanded for entry of an order granting 60(b) relief from that portion of the order approving attorney fees and for further proceedings consistent with the opinion herein.

ROBERTS, RUDMAN and DANA, JJ., concurring.

CLIFFORD, Justice, dissenting.

Although I agree with the court on the importance of compliance with M.R.Civ.P. 17A(b)(1) in proceedings to approve a settlement of a claim on behalf of a minor, the noncompliance with that rule in this case was not properly preserved by the Scotts, and, in any event, is harmless error. Accordingly, I respectfully dissent.

The Scotts moved for relief from the order approving the minor settlement pursuant to M.R.Civ.P. 60(b). They were granted a full hearing on that motion. At no time before the Superior Court did they raise the issue of failure to comply with M.R.Civ.P. 17A(b)(1). Their reliance on the issue therefore should be precluded, *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 714 (Me.1993), especially since they did not even brief the issue in their appeal to this court. *See Chadwick–BaRoss, Inc. v. Martin Marietta Corp.*, 483

---

12. The trial court did deal with the misrepresentation issue and found none:

There is certainly no evidence that he [Lipman] committed a fraud on Mr. and Mrs. Scott, who are the unfortunate people in this whole situation. And there is no evidence, nor does any- thing in my recollection about the presentation to me by Mr. Lipman indicate, that he in any way misrepresented things to me or that he in any way attempted to or succeeded in perpetrating some sort of a fraud on the Court.

A.2d 711, 717 (Me.1984) (issue neither briefed nor raised at oral argument not preserved).

Even if the Scotts are allowed to belatedly pursue the Rule 17A(b)(1) issue on appeal, it should avail them nothing. The purpose of the Rule 17A affidavit and supporting papers requirements is to insure that the party representing the minor child is fully informed of the circumstances and the terms of the settlement, including the amount of the attorney fees and the costs that are to be paid from the settlement funds. At the hearing on the Rule 60(b) motion, the court found that the Scotts had been fully informed as to the attorney fees. In the circumstances of this case, the failure to comply with Rule 17A(b)(1) concerning the Scotts' right to attend the Rule 17A hearing amounted to nothing more than harmless error.

Moreover, the court did in fact consider again the issue of the reasonableness of the attorney fees at the Rule 60(b) hearing, and concluded that they were reasonable. Although the presumptive fee provisions of 24 M.R.S.A. § 2961(3) were not adhered to, I would not disturb the considered decision of the Superior Court in this case. I would affirm the denial of the motion for relief from judgment.